UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

UNITED STATES OF AMERICA,                                          Plaintiff,

v.                                        Criminal Action No. 3:18-cr-172-DJH-5

MATTHEW D. THOMPSON,                                          Defendant.

* * * * *

## MEMORANDUM AND ORDER

Defendant Matthew D. Thompson pleaded guilty to possession of a controlled substance with intent to distribute and engaging in monetary transactions in property derived from specified unlawful activity, and the Court sentenced him to 123 months of imprisonment.  (Docket No. 347, PageID.1640–41)  Thompson, proceeding pro se, now moves to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255.  (D.N. 378)  The Court referred the matter to Magistrate Judge Lanny King for report and recommendation under 28 U.S.C. § 636(b)(1)(A) and (B).  (D.N. 379)  Judge King issued his Findings, Conclusions, and Recommendation on March 28, 2023, recommending that Thompson's motion be denied.  (D.N. 385)  Thompson timely objected.[1] (D.N. 388; *see* D.N. 386; D.N. 387)   After careful consideration, the Court will overrule Thompson's objections, adopt Judge King's recommendation, and deny the motion for the reasons set forth below.

---

[1] The objection's filing date is May 18, 2023, which is eight days after Thompson's deadline.  (*See* D.N. 387; D.N. 388)  But "[u]nder the prison mailbox rule, a [pro se prisoner's submission] is considered filed" as of the date he provides it "to prison officials."  *Keeling v. Warden*, 673 F.3d 452, 456 (6th Cir. 2012)  (citing *Cook v. Stegall*, 295 F.3d 517, 521 (6th Cir. 2002)); *see Cretacci v. Call*, 988 F.3d 860, 866 (6th Cir. 2021) (citations omitted) (discussing the various filings to which the rule applies).  It is presumed that the prisoner delivered the filing on the date he signed it.  *Brand v. Motley*, 526 F.3d 921, 925 (6th Cir. 2008) (citations omitted).  Thompson's objection is signed and dated May 5, 2023, and thus may properly be considered.  *See Keeling*, 673 F.3d at 456 (citation omitted).  (D.N. 388, PageID.1913; *see* D.N. 387)

1

# I.

Thompson was charged with one count of conspiracy to possess with intent to distribute a controlled substance causing death (Count 1), two counts of possession of a controlled substance with intent to distribute (Counts 2 and 4), and one count of engaging in monetary transactions in property derived from specified unlawful activity (Count 10).  (D.N. 77, PageID.274–76, 281–82)  The Court dismissed Counts 1 and 2 on the government's motion (D.N. 347), and Thompson pleaded guilty to the remaining charges pursuant to a Federal Rule of Criminal Procedure 11(c)(1)(A) and (B) plea agreement.  (D.N. 280)  Under the agreement, Thompson (1) stipulated that he possessed "40 grams or more of . . . fentanyl" on February 28, 2019[2] (D.N. 281, PageID.1161 ¶ 3); (2) waived his right to contest his sentence, with the exception of ineffective-assistance-of-counsel and prosecutorial-misconduct claims (*id.*, PageID.1167 ¶ 13); and (3) acknowledged that the government's sentencing recommendation did not bind the Court.  (*Id.*, PageID.1169 ¶ 22)

The U.S. Probation Office (USPO) issued a Presentence Investigation Report (PSR).  (D.N. 349)  Notably, the PSR reported that (1) Thompson possessed "82.62 grams of fentanyl" on February 28, 2019 (*id.*, PageID.1661 ¶ 24); (2) "[o]n March 6, 2019, members of law enforcement" surveilled "Thompson travel[ing] to a residence . . . where he was seen meeting with individuals for short periods of time within [a] vehicle" (*id.* ¶ 25); (3) those officers stopped the vehicle and seized "approximately $20,000" in cash that "Thompson attempted to conceal" (*id.*); (4) "based on the current street value[,]" the currency was "equivalent to 200 grams of fentanyl" (*id.*); and (5) Thompson should therefore "be[] held responsible for 282.62 grams of fentanyl." (*Id.*)  Thompson

---

[2] The United States similarly stipulated that Thompson possessed "at least 40 grams of [f]entanyl." (D.N. 281, PageID.1166 ¶ 11)

objected to the PSR on multiple grounds, including an "object[ion] to the [suggested] narcotics weight." (*Id.*, PageID.1677–80)

The Court ultimately sentenced Thompson to 123 months in prison (D.N. 347, PageID.1641), which he moves to vacate pursuant to § 2255, asserting that (1) he was "[d]eprived of adequate representation at sentencing" (Claim 1); (2) USPO ignored the plea agreement's drug-weight stipulation, creating "an improper delegation of judicial authority" (Claim 2); and (3) counsel for the United States failed to bring the "stipulated drug weight attribution of 40 gram[s] of [f]entanyl" to the Court's attention (Claim 3).  (D.N. 378, PageID.1865–70)  The Court referred the matter to Magistrate Judge Lanny King for report and recommendation.  (D.N. 379)  Judge King recommended that Thompson's motion be denied on all grounds and that no certificate of appealability issue.[3]  (D.N. 385, PageID.1907)  Thompson objects.  (D.N. 388)

## II.

When reviewing a report and recommendation, the Court reviews de novo "those portions of the report or specified proposed findings or recommendations to which objection is made."  28 U.S.C. § 636(b)(1)(C).  An objection "is specific when 'it explain[s] and cite[s] specific portions of the report which [the movant] deem[s] problematic.'"  *United States v. Beard*, No. 513-CR-00022-TBR-LLK, 2017 WL 3055513, at *2 (W.D. Ky. July 19, 2017) (quoting *Robert v. Tesson*, 507 F.3d 981, 994 (6th Cir. 2007)) (first, second, and fourth alterations in original).  Objections are not "sufficiently specific if they merely restate the claims made in the initial petition, 'disput[e] the correctness' of a report and recommendation without specifying the findings purportedly in error, or simply 'object[] to the report and recommendation and refer[] to several of the issues in the case.'"  *Bradley v. United States*, No. 18-1444, 2018 WL 5084806, at *3 (6th Cir. Sept. 17,

---

[3] Thompson does not object to Judge King's certificate-of-appealability finding.  (*See* D.N. 388)

2018) (quoting *Miller v. Currie*, 50 F.3d 373, 380 (6th Cir. 1995)).  The Court may adopt without review any portion of the report to which no objection is made.  *See Thomas v. Arn*, 474 U.S. 140, 150 (1985).  Upon review, the Court "may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions."  Fed.  R. Civ. P. 72(b)(3).

Judge King recommended denying Thompson's motion because (1) the claims "lack a factual basis" (D.N. 385, PageID.1904); (2) the claims lack a legal basis (*id.*, PageID.1904–06); and (3) Thompson waived Claim 2 pursuant to his plea agreement.  (*Id.*, PageID.1906)  Thompson objects, arguing that his attorney's performance was "objectively unreasonable"; that Judge King misinterpreted the drug-weight-attribution stipulation; and that the cited waiver is inapplicable because Thompson's "sentence was not imposed pursuant to the plea agreement that he established with the prosecution."  (D.N. 388, PageID.1911–13)

## A.    Claim 1—Ineffective Assistance of Counsel

Thompson asserts that his counsel should have objected to USPO's recommendation that the $20,000 found in Thompson's possession on March 6, 2019, be converted to a corresponding drug weight.[4]  (D.N. 378, PageID.1865)  Thompson contends that this failure constitutes ineffective assistance of counsel under the Sixth Amendment because "[t]here is nothing in the . . . record that enables the [C]ourt to [make this] conver[sion]." (*Id.*; D.N. 384, PageID.1897) Judge King disagreed, concluding that Claim 1 incorrectly assumes that the parties "agreed to [a] maximum weight of illegal drugs involved." (D.N. 385, PageID.1904) Judge King also concluded that the claim lacked a legal basis because the conversion formula utilized by the Court was

---

[4] In his motion, Thompson asserts that authorities discovered $25,000 in his vehicle.  (D.N. 378, PageID.1865)  This is inaccurate; the PSR reports that the amount discovered was "approximately $20,000."  (D.N. 349, PageID.1661)

4

consistent with Sixth Circuit precedent; therefore, a failure to object did not prejudice Thompson. (*See id.* (citing *United States v. Russell*, 595 F.3d 633, 646 (6th Cir. 2010)))  In his objection, Thompson argues that his "representation was objectively unreasonable[] because" the lack of objection resulted in a heavier sentence.  (D.N. 388, PageID.1912)

The Court agrees that Thompson cannot demonstrate prejudice resulting from his counsel's failure to object to the conversion.  *See Strickland*, 466 U.S. at 694–95.  To succeed on an ineffective-assistance-of-counsel claim, a movant must establish (1) deficient performance by counsel that (2) "prejudiced the defense."  *Id.* at 687.  A successful claim requires both showings, but a court need not "address both components of the inquiry if the defendant makes an insufficient showing on one."  *Id.* at 687, 697.  As to prejudice, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Id.* at 694.  Thompson argues that prejudice exists here because his "counsel's failure to object to the" currency-to-drug-weight conversion resulted in a heavier sentence.  (D.N. 388, PageID.1912)  He cites two cases for support: *Glover v. United States*, 531 U.S. 198 (2001), and *Spencer v. Booker*, 254 F. App'x 520 (6th Cir. 2007).  (D.N. 388, PageID.1912 (citations omitted))  But these cases are not relevant to Claim 1.  *Glover* concerned defense counsel's failure to refute a conviction-grouping argument.  531 U.S. at 200–01.  *Spencer* involved a "state appellate court's refusal to review [the movant's] ineffective-assistance-of-counsel claim" based on procedural default.  254 F. App'x at 522.

Here, the relevant question is whether an objection to conversion of the $20,000 to a corresponding drug weight would have resulted in a lesser sentence for Thompson.  *See Strickland*, 466 U.S. at 694.  Thompson does not cite any authority that would have supported such an objection (*see* D.N. 378; D.N. 384; D.N. 388), and Sixth Circuit law shows that an objection would

have been unsuccessful: in *Russell*, the court explained that "[s]eized funds can be converted into an equivalent amount of drugs." 595 F.3d at 646 (citing *United States v. Sandridge*, 385 F.3d 1032, 1037 (6th Cir. 2004)); *see also United States v. Salas*, 455 F.3d 637, 641 (6th Cir. 2006) (collecting cases and emphasizing the Sixth Circuit's approval of such conversions). "To do so, 'the Government must prove by a preponderance of the evidence both the amount of money attributable to drug activity and the conversion ratio.'" *Russell*, 595 F.3d at 646 (citation omitted); *see Salas*, 455 F.3d at 641 (collecting cases). Thompson does not object to the government's conversion ratio (*see* D.N. 378; D.N. 384; D.N. 388); "[t]herefore, the only issue . . . is the amount of money attributable to the sale of [fentanyl]." *Russell*, 595 F.3d at 646. According to the PSR: (1) the $20,000 was discovered less than a week after the February 28, 2019 controlled buy (D.N. 349, PageID.1661 ¶¶ 24–25); (2) Thompson admitted to money laundering (*id.*, PageID.1662 ¶ 30); and (3) he lacked legitimate employment between 2018 and July 2019. (*Id.*, PageID.1670 ¶¶ 68–69) These facts establish by a preponderance of the evidence that the cash Thompson possessed was derived from fentanyl sales. *See Russell*, 595 F.3d at 647. He thus cannot "show . . . that, but for [his] counsel's [alleged] unprofessional error[,] the result of the [sentencing] proceeding would have been different," *Strickland*, 466 U.S. at 694, and this objection will be overruled.

## B.    Claim 2—Conversion of Currency to Drug Weight

Thompson also argues that "USPO['s] recomme[n]dation disregarded the plea[-]agreement stipulation" and that the Court's acceptance of the currency-to-drug-weight conversion "constitutes an improper delegation of judicial authority." (D.N. 378, PageID.1866) Specifically, he argues that the plea agreement contains a stipulation to "an agreed-upon drug quantity" of 40 grams of fentanyl (*id.*, PageID.1867); therefore, he maintains that "USPO's

recommended sentence on the basis of 280[5] grams of fentanyl" was improper.  (D.N. 384, PageID.1897)  Judge King concluded that this contention lacked a factual basis.  (D.N. 385, PageID.1905)  Thompson objects, arguing that Judge King insufficiently analyzed the argument. (*See* D.N. 388, PageID.1912)

The Court need not consider Claim 2 because Thompson waived his right to contest his sentence in his plea agreement, except for ineffective-assistance-of-counsel or prosecutorial-misconduct claims.  (D.N. 281, PageID.1167 ¶ 13)  Claim 2 alleges neither.  (D.N. 378, PageID.1866–67)  Even if the argument merited analysis, the Court agrees with Judge King's conclusion that the parties stipulated to a minimum—not maximum—drug quantity.  (D.N. 385, PageID.1905; *see* D.N. 281, PageID.1161, 1166 ¶¶ 3, 11 (stipulating that Thompson possessed "40 grams *or more* of a detectable amount of fentanyl" and that he possessed "*at least* 40 grams of [f]entanyl" (emphasis added)))  Because Thompson waived his right to dispute his sentence on this basis (D.N. 281, PageID.1167 ¶ 13) and his Claim 2 argument is contradicted by the clear language of the plea agreement, this objection will also be overruled.  *See United States v. Warren*, 8 F.4th 444, 446 (6th Cir. 2021) (explaining that plea agreements—like contracts—are interpreted according to their "plain language"); *United States v. Robison*, 924 F.2d 612, 613 (6th Cir. 1991) (citations omitted) (noting that "[p]lea agreements are contractual in nature[,]" and that courts interpret and enforce them "us[ing] traditional principles of contract law").

## C.  Claim 3—Prosecutorial Misconduct

Thompson further alleges prosecutorial misconduct, arguing that the government stipulated to a maximum drug weight of 40 grams of fentanyl but did not properly inform the Court of the

---

[5] As set out in the PSR, Thompson was "held responsible for 282.62 grams of fentanyl."  (D.N. 349, PageID.1661)

agreement.  (D.N. 378, PageID.1869)  He claims that this constitutes a breach of the plea agreement.  (*Id.*, PageID.1870)  Judge King disagreed, concluding that the stipulation was to a minimum—not maximum—drug weight.  (*See* D.N. 385, PageID.1905)  Thompson's objection to this conclusion "merely restate[s] the claims made in [his] initial [motion]," and thus need not be considered.  *Bradley*, 2018 WL 5084806, at *3 (quoting *Miller*, 50 F.3d at 380).  (*Compare* D.N. 378, PageID.1869 ("[The prosecution] failed to meet its agreed-upon obligation by refusing to provide judicial notice of the . . . stipulated drug weight attribution.") *with* D.N. 388, PageID.1912 ("The drug attribution was stipulated[, but Thompson's] sentence was not imposed pursuant to [that stipulation]."))  In any event, after analyzing the argument, the Court agrees with Judge King's determination (*see* D.N. 385, PageID.1905): as explained above, the plea agreement's plain meaning establishes that the parties agreed to a drug-weight minimum, not a maximum.  The government therefore did not breach the agreement, *see Warren*, 8 F.4th at 446, and this objection will be overruled.

### III.

For the reasons explained above, and the Court being otherwise sufficiently advised, it is hereby

**ORDERED** as follows:

(1)     Thompson's objection to the Findings, Conclusions, and Recommendation (D.N. 388) is **OVERRULED**.

(2)     The Findings, Conclusions, and Recommendation of Magistrate Judge Lanny King (D.N. 385) are **ADOPTED** in full and **INCORPORATED** by reference herein, including Judge King's recommendation against the issuance of a certificate of appealability.

(3)     Thompson's motion to vacate, set aside, or correct his sentence (D.N. 378) is

**DENIED**.

(4)     This matter remains **CLOSED** and **STRICKEN** from the Court's docket.

April 29, 2024

**David J. Hale, Judge**
**United States District Court**

9